**CONSOLIDATED CORK CORP.**

v.

**UNITED STATES.**

C.D. 3902; Protests 65/509–95029, etc.

United States Customs Court,
First Division.

Oct. 17, 1969.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz, New York City, of counsel) for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Irving A. Mandel and Thomas A. S. Fernandes, New York City, trial attorneys), for defendant.

Before WATSON, MALETZ, and RE, Judges.

MALETZ, Judge:

These cases, which were consolidated for trial, involved the question as to the proper tariff levy on granulated cork that was imported from Portugal and entered at Philadelphia during the period from April 1964 to August 1965. The cork was assessed duty by the government under item 220.10 of the Tariff Schedules of the United States (19 U. S.C. § 1202) as cork, granulated or ground, weighing *not over* 6 pounds per cubic foot uncompressed.

Plaintiff insists that the duties thus assessed and paid are excessive. It contends that the granulated cork in question weighed *over* 6 pounds per cubic foot uncompressed and is therefore dutiable at 1 cent per pound under item 220.15 as "other" granulated cork, i. e., cork weighing *over* 6 pounds per cubic foot uncompressed.

540

Quoted below are the pertinent provisions of the tariff schedules:

```
Cork, granulated or ground:
220.10  Weighing  not  over  6  pounds
            per cubic foot uncompressed,
            except regranulated cork .. 3¢ per lb.
220.15  Other ..................... 1¢ per lb.
```

The basic issue in light of these tariff provisions is whether the imported granulated cork weighed over or under 6 pounds per cubic foot uncompressed. This in turn depends essentially on the meaning of the term "uncompressed" as used in this provision of the tariff schedules.

There is no material dispute as to the facts.[1] Plaintiff is a manufacturer of bottle caps of crown cork for the soft drink and brewing industry, and uses in its operations only raw cork of a high-grade milling quality. It imported the shipments here in issue which consisted of bales of granulated cork that were highly compressed and bound with sticks, wire and burlap.

The production, compression and packing of the imported cork took place in Portugal in the following manner: Cork waste, which was the raw material, was passed through a crusher that reduced it to smaller pieces. These pieces of cork were then passed over a screen to remove the dust and dirt, after which they were passed through a mechanical dryer in order to reduce the humidity content to less than 6 percent. The pieces were then processed by milling machinery that reduced them to granules. Later, the granules were subjected to a screening process for separation into sizes and passed over air tables to separate them to the required density, i. e., weight per cubic foot.

At the next step, a baling box with wooden slats and burlap at the bottom was filled with the granulated cork to an exact level. Hydraulic pressure of approximately 200 pounds per square inch was then applied to the granulated cork by a powerful baling press for about 10 minutes, by which time the cork had been compressed to such an extent that the individual granules had practically coalesced into an extremely hard condition. The sides of the baling box were then opened, the bale wrapped around with burlap and secured by wires. The hydraulic pressure was then released and the bale removed in its completed form.

Before compression, the granulated cork in each of the bales weighed less than 6 pounds per cubic foot; as compressed in the bales, the cork had a weight of between 10 and 11 pounds per cubic foot. The cork was imported in compressed bales to save on shipping and handling charges.

After the shipments arrived in the United States and were in plaintiff's warehouse for some period of time, a representative of plaintiff tested 13 of the bales to determine the weight of the cork per cubic foot. The testing of each bale was performed as follows: The wires were first cut and the burlap and sticks removed. Upon thus opening the bale, the cork was in a very hard and tough coalesced condition. A fire ax was used to cleave the mass into lumps, after which the flat of the ax was used to smash the lumps into small pieces. Such pieces were then forced through a screen placed over the mouth of a drum. The drum was shaken and jarred to be sure it was filled, and the excess was scraped off the top. The drum with its contents was then weighed. The weight of the empty drum and its cubic content being known, a calculation was made of the density or weight of the cork in pounds per cubic foot. All the cork so tested weighed over 6 pounds per cubic foot, with the weight ranging from 6.3 pounds to 7.0 pounds.

Each of these tests was performed and completed within 20 minutes from the initial breaking of the wire to the final weighing of the filled drum. Testing

[1] Without objection there was incorporated into the record of the present cases the record in Consolidated Cork Corp. et al. v. United States, 54 Cust.Ct. 83, C.D. 2512 (1965).

was performed within this 20-minute period because of plaintiff's awareness that once the bale was opened and the severe pressure removed, the cork would gradually decompress, thus expanding in volume and diminishing in density.[2] The reason for this of course is that as the cork particles expand to assume their original size prior to compression, a lesser number of cork particles occupy a particular volume, thereby diminishing the weight of the cork per cubic foot. In this connection, the undisputed testimony of plaintiff's expert witness shows that within 20 minutes after a bale is opened and the restraint removed by breaking the cork into small particles, the cork partially expands about 35 percent, resulting in a density in the drum of about 65 percent of what it was in the bale—i. e., a density (as we have seen) of from 6.3 to 7.0 pounds per cubic foot. This testimony further shows that within 24 hours after opening of the bale and removal of the restraint, the density drops to 5.9 pounds per cubic foot; that within 72 hours, the density falls to 5.8 pounds; and that after a week, it drops to approximately 5.6 pounds.

The testimony of plaintiff's witness indicates, also, that after the cork is thus released from restraint, decompression continues very slowly at a "logarithmic decay," with the rate of decompression continually reducing. On this basis, the witness extrapolated a curve showing that it would take about 30 years for the cork to attain the total release of the compressive forces and reach its original uncompressed density. The curve demonstrates, in addition, that in about a month after a bale is opened the rate of decompression of the cork becomes less than one-tenth of a pound per cubic foot in a 24-hour period.

By contrast to plaintiff's weight tests —which, as we have seen, were completed within 20 minutes after the bales were opened—the government's tests were performed more than a week after the cork was removed from the bale and established that the cork weighed *less than* 6 pounds per cubic foot. In the government's tests, representative samples of the imported merchandise were received by a customs representative in open boxes or bags in a loose granular stage. Within a day or two after that, they were sent to the customs laboratory for analysis where they remained for one week before being tested. The tests were performed at the laboratory by filling a calibrated 3-liter glass cylinder to a precalibrated mark with cork; jostling and bumping the cylinder in order to settle the cork and eliminate voids between the particles; and weighing the amount of cork that reached the calibrated mark. The results of these tests showed that the cork had a density ranging from 4.5 to 5.29 pounds per cubic foot. It is not disputed that this week's delay in testing explains the difference in the weights found by plaintiff and the government.

This brings us to the basic issue—the meaning of the term "uncompressed" as used in item 220.10 of the tariff schedules.[3] Plaintiff argues that the

---

2. While in a compressed condition in the bale, the cork cannot expand because it is restrained by the packaging materials, the sticks, and the heavy iron wire.

3. The prior case of Consolidated Cork Corp. et al. v. United States, *supra*, 54 Cust. Ct. 83, arose under a predecessor provision—par. 1511 of the Tariff Act of 1930 which read: " * * * clean, refined, or purified, granulated, or ground cork, weighing not over six pounds per cubic foot uncompressed, 3 cents per pound; all other ground, granulated, or regranulated cork, 1 cent per pound * * *." In that

case the court did not consider the issue presently before us; it decided only that tests made by plaintiffs using a sample consisting of four bales of cork, showing variances of no more than 7/10ths of a pound in a single bale, all of which tests showed a weight of more than 6 pounds per cubic foot, were more accurate and representative of the density of the entire shipment than a single test made by a government chemist of a sample containing about 11 ounces, which test was not made by a method prescribed by regulation, official manual, or by the customs laboratory.

legislative history of the provision establishes that when a bale of compressed cork is opened, it *immediately* becomes "uncompressed" within the meaning of the statutory provision. On this basis it says that if *immediately* upon opening the bale, the cork weighs over 6 pounds per cubic foot, that is its weight "uncompressed" within the meaning of item 220.10. Hence plaintiff argues that "cork which is 35% uncompressed"—which was its condition 20 minutes *after* the bale was opened—is *a fortiori* "uncompressed" within the tariff meaning. The only other alternative, it argues, "would be to wait 30 years till the cork becomes fully uncompressed before testing it, which was clearly not the intent of Congress." This alternative, it adds, would also be contrary to the basic tariff principle that imported merchandise is classifiable in its condition as imported. Finally, plaintiff concludes that because of this principle that imported merchandise is classifiable in its condition as imported, its tests which were made within 20 minutes after the bales were opened more accurately reflected the density at the time of importation than did the tests by the government which were made more than a week after the bales were opened. Defendant argues, on the other hand, that cork which is uncompressed only partially, cannot be considered to be "uncompressed" cork as that term is used in item 220.10. That term, it says, means its weight before compression or its weight after the effect of the preimportation compression has been undone or neutralized.

■ We consider first the legislative history of item 220.10 which demonstrates the following: The purpose of the 6-pound weight distinction is to differentiate high-grade granulated cork from the lower grade. The lighter-weight material is milled cork of high quality that has been cleaned and screened and is suitable for the manufacture of beverage seals and other products which require the complete elimination of hard-back, dirt and other extraneous matter. This high-grade cork invariably weighs *not more than* 6 pounds per cubic foot uncompressed. The heavier-weight material is low-grade cork that contains hard-back and impurities and is used principally as a fill for insulation purposes; such low-grade cork invariably weighs *more than* 6 pounds per cubic foot. In these circumstances, the intent of Congress in continuing the 3-cent per pound rate specified in paragraph 1511 of the Tariff Act of 1930 for cork weighing not more than 6 pounds per cubic foot was to provide protection for American manufacturers of high-grade (lighter-weight) granulated cork. As for the lower quality, weighing more than 6 pounds to the cubic foot, it was believed that 1 cent a pound duty provided ample protection. See Hearings on Proposed Revised and Consolidated Tariff Schedules before the U. S. Tariff Commission, *Tariff Classification Study—Schedule 2* (Nov. 15, 1960), pp. 200–05, 268; Hearings before Committee on Ways and Means on *Tariff Readjustment, 1929* (70th Cong., 2d Sess.), Vol. XIV, Schedule 14, Sundries (1929), pp. 7287–7288.

Additionally, in enacting items 220.10 and 220.15 Congress dropped the requirement in paragraph 1511 of the Tariff Act of 1930 that customs officials determine whether granulated cork had been cleaned, refined or purified. The reason was set out in the *Tariff Classification Study—Schedule 2* (Nov. 15, 1960), p. 47:

Items 220.10 and 220.15 refer to granulated or ground cork. The present act provides a 3-cent-per-pound rate for granulated or ground cork which is cleaned, purified, or refined and weighs not over 6 pounds per cubic foot uncompressed, and a 1-cent-per-pound rate for other granulated cork (including regranulated cork which is the granulated waste of cork insulation). Because of the difficulty inherent in determining whether granulated or ground cork has been cleaned, refined or purified, the only practical criterion which can be used to determine which of these rate provisions should apply in a particular instance

is the weight of the imported product. Under this practice, only a negligible amount of imports was assessed the 3-cent-per-pound rate of duty from 1930 to 1958. In the schedule published for hearing, the Commission proposed a single provision for granulated or ground cork with the rate of 1 cent per pound. Because of representations from the trade, however, a provision bearing the 3-cent-per-pound rate is included in the final schedule, but the present requirement that customs officials determine whether such granulated cork has been cleaned, refined, or purified has been dropped.

■ A further consideration important to note is that in the enactment of item 220.10 of the tariff schedules, Congress made no change in the term "uncompressed" as it appeared in the predecessor paragraph 1511 of the 1930 act. From this it would seem obvious that the term was intended to have the same meaning under the tariff schedules as under the previous act. In this connection, there is no suggestion in the legislative history of the 1930 legislation that the term was intended to be used save in its common meaning. Nor is there any indication otherwise in the tariff summaries or explanatory notes of the Tariff Commission dealing with the later tariff schedules. And in its common meaning "uncompressed" means not reduced in volume by pressure. Thus, Webster's *Third New International Dictionary, Unabridged* (1963), has the following definitions:

| | |
|---|---|
| *uncompressed* | adj: not compressed |
| *compressed* | adj 1: pressed together: compacted: reduced in volume by pressure * * * |
| *compress* | vt: to reduce the volume, size, duration, density, or degree of concentration of by or as if by pressure: as *a*: to make (an opening or the inner capacity of) smaller: constrict * * * |

*Britannica World Language Edition of Funk & Wagnalls Standard Dictionary* (1963 ed.), Vol. I, defines "compress" this way:

To press together or into smaller space; condense; compact; concentrate.

Webster's *New International Dictionary* (1956) defines "compressed" as follows:

Pressed together; compacted; reduced in volume by pressure; condensed.

■ From what has been said, it is apparent that the cork is "uncompressed" within its common meaning only after the effect of the preimportation compression has been completely undone or neutralized, and the cork has returned to its original precompressed density. See Consolidated Cork Corp. et al. v. United States, *supra,* 54 Cust. Ct. at 84. It is quite true that the record shows that this would take a period of 30 years. But this scarcely means that one would have to wait 30 years to determine such uncompressed weight—as plaintiff indicates. For, as the testimony of plaintiff's own witness makes plain, one may determine this uncompressed weight at the time of importation by opening the bale, breaking the cork into small granules, testing its partially uncompressed weight per cubic foot *at that time,* and then by using an extrapolated curve of the type indicated by plaintiff's witness, determine what its weight will be at the end of the 30-year period when the effect of the preimportation compression has been completely undone.

Additionally, it is to be noted that if Congress in adopting the term "uncompressed" had intended to mean cork which is uncompressed only partially— which was the situation here in the 20 minutes after the bales were opened—it would have provided for cork weighing not over 6 pounds per cubic foot *partially uncompressed,* rather than for cork weighing not over 6 pounds per cubic foot *uncompressed.* Actually plaintiff's position goes even beyond this arguing, as it does, that when a bale of compressed cork is opened, it *immediately* becomes "uncompressed" within the statutory meaning. However, the testimony of plaintiff's witnesses was that when the sticks, wire and burlap were removed from the compressed bale, the cork *"did*

*not expand at all."* [Emphasis added.] Indeed (as discussed previously), in this early released condition the cork was "a very hard, tough material" which had to be broken up by using a fire ax. Since the cork is in that condition immediately upon opening the bale, we fail to understand how it could be "uncompressed" at that point; were that the case, the term "uncompressed," as used in the statute, would be synonymous, in effect, with "compressed."

Moreover, the construction urged by plaintiff would not only frustrate the Congressional purpose underlying the enactment of item 220.10, it would make a nullity of the provision. As we have seen, the purpose of that item was to impose a tariff of 3 cents a pound on importations of high-grade cork, with the 6-pound uncompressed weight distinction differentiating the high-grade (lightweight) cork from the low-grade (heavier-weight) cork. But if the construction urged by plaintiff were correct—that compressed cork immediately becomes "uncompressed" upon opening of the bale—all high-grade cork that was compressed by the exporter to a density of over 6 pounds per cubic foot would be dutiable at only 1 cent a pound under item 220.15 on the same basis as low-grade cork. The reason is that immediately upon opening the bale the cork granules would still be in a coalesced condition and thus weigh about the same as they did when compressed by the exporter—i. e., in excess of 6 pounds per cubic foot. This, in fact, is precisely the situation in the present case where high-grade cork weighing less than 6 pounds per cubic foot was compressed by the exporter for shipping and packing purposes to a density of from 10 to 11 pounds per cubic foot. Manifestly, this is the very grade of cork that Congress intended to be dutiable at the 3-cent-per-pound rate specified by item 220.10.

Plaintiff points out, however, that at the hearings before the Tariff Commission prior to the adoption of the tariff schedules, an industry witness testified that upon opening the bale the granulated cork "immediately becomes un-compressed" and is weighed in that form. That testimony was as follows, *Tariff Classification Study—Schedule 2* (Nov. 15, 1960), pp. 203–04:

Now, here is something that I didn't know until the other day. When this granulated cork is imported into the United States and we, my company, have imported some a few years ago, it doesn't come in loose. Cork is very bulky. They compress it in a bale, wrap it in burlap or some kind of a covering, and it comes in compressed. It isn't composition. The particles have not been coalesced. They simply compress it to avoid the great bulk that presents a shipping problem.

So when it arrives at the port, they open the bale and it immediately becomes uncompressed. They take it and they measure out a cubic foot to see what it weighs and it is in the uncompressed form that they measure it.

Plaintiff adds that the Tariff Commission in its report (quoted previously) noted that "the only practical criterion which can be used to determine which of these rate provisions should apply in a particular instance is the weight of the imported product." Id., p. 47. From this plaintiff states that "by adopting the Tariff Commission's recommendation, the intent of Congress seems clear that the weight upon opening the bale, when the cork 'immediately becomes uncompressed' should be the controlling factor." However, this argument, which is premised on the foregoing quoted statement of the industry witness before the Tariff Commission, presents several difficulties. First, there is no evidence whatever to indicate that the Tariff Commission relied on or even considered that statement at the time the provisions involved here were adopted. The explanatory notes, the *Tariff Classification Study*, and the *Submitting Report* make no reference to the statement and, in fact, are completely devoid of any treatment with respect thereto. See e. g., Rice & Co. Corp. v. United States, 7 Cust.Ct. 109, 110–11, C.D. 547 (1941). Further (as pointed out previously), there is no suggestion in these notes and reports, or in the leg-

islative history of the predecessor paragraph 1511 of the 1930 act that the term "uncompressed" was to be construed in other than its common meaning. Moreover, the statement would seem clearly to be based on misinformation, inconsistent as it is with the facts shown by the record that when a bale is opened, the cork does not expand at all but rather is in a very hard, tough condition. Finally, for the reasons pointed out, the statement would have the consequence for all practical purposes of nullifying item 220.10. In view of these considerations, it would be highly inappropriate here to look to the statement as an aid in the construction of that item. See e. g., United States v. Kung Chen Fur Corporation, 38 CCPA 107, 117–18, C.A.D. 447 (1951); General Dyestuff Corp. v. United States, 6 Cust.Ct. 391, 399, C.D. 502 (1941).

In summary, we conclude that cork is "uncompressed" within the meaning of item 220.10 only after the effect of pre-importation compression has been completely undone or neutralized, and the cork has returned to its original precompressed density. Since the record shows that in that condition the cork in issue weighed less than 6 pounds per cubic foot, the necessary conclusion is that it was properly classified by the government under item 220.10 and assessed duty of 3 cents per pound.

The protests are overruled. Judgment will be entered accordingly.